## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

(1)   JULIA BARBARA COSBY

      Plaintiff,

v.

(1)   CITY OF WATONGA;
(2)   WILLIAM SHAWN KAYS;
(3)   ANITRA HARPER;
(4)   MICHELLE SINGH;

      Defendants.

Case No.: CIV-23-550-D

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED

## COMPLAINT[1]

COMES NOW the Plaintiff, Julia Cosby and for her cause of action against the Defendants, states the following:

### JURISDICTION AND VENUE

1.      The acts giving rise to this lawsuit occurred in Blaine County, State of Oklahoma, within this judicial district.

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivations of rights secured by the Fourteenth Amendment to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

---

[1]      Plaintiff previously filed her claims against the Defendants on August 10, 2021 in *Cosby v. City of Watonga, et al.*, Case No. CIV-21-785-PRW ("Cosby I"). On June 23, 2022, the Court entered an Order dismissing Plaintiff's claims without prejudice. See Cosby I, Dkt. # 8. Therefore, this action is being re-filed within one (1) year pursuant to 12 O.S. §100

3.      The jurisdiction of this Court is also invoked under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

4.      This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, since claims form part of the same case or controversy arising under the United State Constitution and federal law.

5.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this district.

<u>**PARTIES**</u>

6.      Paragraphs 1-5 are incorporated by reference.

7.      Plaintiff, Julia Cosby, is a resident of Blaine County, State of Oklahoma.

8.      Defendant City of Watonga, Oklahoma ("the City"), is a municipality located in Blaine County, Oklahoma. The City provides and employs the Watonga Police Department. ("WPD").

9.      Defendant Shawn Kays ("Kays"), was, at all times relevant hereto, the Watonga Police Chief residing in Watonga, Oklahoma and acting under color of state law. Defendant Kays, as police Chief and the head of the Watonga Police Department, was responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the Watonga Police Department, including the policies, practices, procedures, and/or customs that violated Plaintiff's rights as set forth in this Complaint.

10.     Defendant Anitra Harper ("Harper") was, at all times relevant hereto, acting under the color of state law as an employee of WPD. Harper is sued in her individual capacity for her personal involvement and participation in the violation of Plaintiff's rights, while acting under

color of State law, as set forth herein. At all times relevant hereto, Harper was acting within the scope of her employment with the City of Watonga.

11.     Defendant Michelle Singh ("Singh") was, at all times relevant hereto, acting under the color of state law as an employee of WPD. Singh is sued in her individual capacity for her personal involvement and participation in the violation of Plaintiff's rights, while acting under color of State law, as set forth herein. At all times relevant hereto, Singh was acting within the scope of her employment as a Watonga Police Officer.

## FACTUAL ALLEGATIONS

12.     Paragraphs 1-11 are incorporated herein by reference.

13.     Plaintiff moved to into a trailer at 520 N. Montgomery St. in Watonga ("the Trailer"), Oklahoma with Wilbur Eugene Randle ("Wilbur") at the beginning of April 2019.

14.     Plaintiff and Wilbur leased the Trailer from Al Harper and Alana Burks.

15.     There was not a written lease agreement for the Trailer, but it was understood that rent in the amount of $350 was to be paid on the 15th of each month.

16.     Shortly after moving into the residence, Wilbur began to verbally and physically assault Plaintiff.

17.     On July 1st, 2019, Wilbur viciously assaulted Plaintiff, which included putting a loaded firearm to Plaintiff's head. Fearful for her life, Plaintiff fled to Wilbur's mother's house, which was located down the street.

18.     Wilbur's mother, Trudie Randle, called the police, and WPD officer Briston Lowry responded and placed Wilbur under arrest. Wilbur was charged with domestic assault and battery. *See* Blaine County Case No. CM-2019-00171.

19.     After the incident Plaintiff was transported to Mercy Hospital in Watonga via ambulance for her injuries.

20.     Wilbur made his initial appearance on July 2, 2019, whereby the Court set Wilbur's bond for $2,000.00 and entered an order requiring that Wilbur have no contact with Plaintiff.

21.     The next day, Wilbur posted bail and moved in with his mother, Trudie Randle, down the street from the Trailer.

22.     Upon information and belief, and unknown to Plaintiff at the time, Alana Burks, Plaintiff's landlord, was closely acquainted with Wilbur and his mother ("the Randles").

23.     Wilbur and his mother did not want Plaintiff living in the Trailer and began an orchestrated campaign to pressure and harass Plaintiff into leaving the residence.

24.     Due to her relationship with the Randles, Alana Burks assisted in harassing the Plaintiff in an attempt to force Plaintiff to vacate the residence.

25.     Alana Burks' sister is Defendant Anitra Harper, who was an employee of the WPD. Harper was employed as an office manager of sorts for the WPD, which provided Harper unfettered access to all WPD records.

26.     Additionally, Harper was close with Defendant Shawn Kays.

27.     Defendant Anitra Harper used her position within the Watonga Police Department to assist her sister Defendant Alana Burk to remove Plaintiff from her residence at the Montgomery St. address.

28.     On the afternoon of July 14, 2019, Plaintiff was at her residence when she heard a loud knock on her door. Before Plaintiff could get to the door to open it, the door was opened with a key. In walked WPD Officer Brian Johnson, who was with Wilbur and Wilbur's sister, Latrice Randle.

29.     Brian Johnson walked into the residence and began aggressively demanding that Plaintiff leave the property because Wilbur had the sole right to live at the residence.

30.     Plaintiff informed Officer Johnson that he had no right to be in the residence and asked that he and the Randles leave.

31.     After yelling at Plaintiff for approximately 10-15 minutes, Johnson finally left.

32.     Later that same evening (July 14, 2019), Plaintiff again was at her residence when someone began loudly banging on her front door, yelling "Police! Open the door." Fearful of another aggressive confrontation, Plaintiff reluctantly opened the door.

33.     When Plaintiff cracked the door open to speak to the individual banging on the door, the door was kicked open by WPD Chief, Shawn Kays. Kays entered the residence and immediately began yelling at Plaintiff.

34.     Kays advised that he was there to serve an eviction notice. Kays recommended that Plaintiff vacate the premises immediately.

35.     In furtherance of his demands that Plaintiff leave the residence, Kays presented Plaintiff with a piece of paper that he purported was an eviction notice. The eviction notice stated that Plaintiff was "required to vacate the premises on or before July 19, 2019" and a failure to do so would "result in civil proceedings against you for unlawful detainer."

36.     Upon information and belief, the purported eviction notice was not legal, had no legal effect and was fabricated by Defendant Chief Kays to achieve the aims of his friends the Burks and his fellow Watonga Police colleagues.

37.     On July 23, 2019, Plaintiff was spotted by Kenneth Burks attempting to enter the Trailer. Burks yelled at Plaintiff, claiming that she had no right to be at the Trailer because Wilbur was moving back in.

38.     Shortly after she was spotted by Kenneth Burks, Alana Burks, her sister Anitra Harper, their father Al Harper, and Plaintiff's abuser, Wilbur Randle, showed up at the Trailer. The Harpers entered the Trailer with a key and shouted obscenities at Plaintiff.

39.     Upon information and belief to be confirmed through discovery, Anitra Harper called Defendant Kays, who had a WPD officer respond to the trailer. Eventually WPD officer Garcia showed up and demanded Plaintiff leave the residence within one hour and never return based on the illegal eviction notice.

40.     Shortly thereafter, Garcia and the Harpers left the Trailer.

41.     Approximately forty-five minutes after leaving the Trailer, Garcia returned with former Chief Kays.

42.     Plaintiff was in the bathroom of the Trailer and Garcia and Kays demanded that Plaintiff leave the residence.

43.     Kays called Plaintiff a "bitch" and told Plaintiff to "get the f**k out now."

44.     Chief Kays then accused Plaintiff of being in possession of marijuana.

45.     Plaintiff told Kays that it was not her marijuana and Kays replied, "I am Chief of Police and can do whatever the fuck I want" followed by pushing Plaintiff and stating "f**k you bitch."

46.     Defendant Kays then violently grabbed Plaintiff and drug her down the hallway of the Trailer and told Plaintiff to grab what she could, before forcing Plaintiff out of the Trailer commanding her to leave the area. Plaintiff was unable to gather all her belongings before being forced out of the Trailer.

47.     Due to Kays throwing Plaintiff out of the Trailer, Plaintiff spent the next few weeks staying with whoever would give her shelter.

48.     Plaintiff learned that her belongings that were left behind in the Trailer had been gathered up and were being stored at the residence of Alana Burks' handyman.

49.     On or about August 13, 2019, Plaintiff went to the handyman's home to retrieve her belongings. Plaintiff spoke with the handyman and he advised that he was going to go grab the belongings.

50.     The handyman left to get Plaintiff's belongings and Plaintiff waited at his residence for him to return with her belongings.

51.     After waiting for an extended period of time for the handyman to return with her belongings, Defendant Kays showed up with his wife, Defendant Michelle Singh, and other WPD officers.

52.     Defendant Kays was not in uniform and accused Plaintiff of burglary. Plaintiff was standing by the back door looking for the handyman when someone screamed "that's her".

53.     Plaintiff told Kays she was not a burglar and that she was invited by the current tenant.

54.     Defendant Kays entered the house through the open backdoor and put his hands on Plaintiff's neck from behind, squeezing it and shoving her, while Defendant Singh and the other Defendant Officers kept grabbing Plaintiff.

55.     Eventually, Kays grabbed Plaintiff and threw her outside on the concrete.

56.     Defendant Kays punched Plaintiff while they detained Plaintiff, and he sat on her back and twisted her handcuffed right arm, until Plaintiff' elbow and shoulder were dislocated. Plaintiff's face hit the concrete hard during the assault and another WPD officer kicked Plaintiff a number of times.

57.     After the assault took place, the officers violently shoved Plaintiff in Singh's police cruiser and locked Plaintiff in the back, all the while squeezing Plaintiff' severely injured arm repeatedly causing injury to Plaintiff.

58.     Singh left the residence with Plaintiff, before suddenly stopping to get out of her car to make a phone call. After a few minutes Singh got back in her cruiser and told Plaintiff that she was going to take her to Mercy Hospital.

59.     Plaintiff was evaluated at the Mercy Hospital Emergency Room before being transferred, against her will, to Red Rock Behavioral Health Psychiatric Hospital by a WPD officer.

60.     Once at Red Rock, Plaintiff was transferred to the Clinton Hospital Emergency Room for evaluation.

61.     At Clinton Hospital, Plaintiff was diagnosed with a dislocated elbow.

62.     Per Oklahoma law for an individual to be admitted to a psychiatric facility against their will an affidavit must be completed claiming the individual to be admitted is a threat to herself or others.

63.     Upon information and belief an affidavit was falsified by Defendant Chief Kays and his subordinates at the Watonga Police Department that stated falsely that Plaintiff is a threat to herself and others.

64.     Upon information and belief Defendant Kays and Defendant Harper were the only two individuals that had unfettered access to Watonga Police department records.

65.     This unfettered access to records by Defendant Kays and Harper aided their illegal efforts against Plaintiff to have her illegally admitted to a psychiatric ward and to be able to cover up said illegal admission and other illegal and unconstitutional conduct.

66.     This unfettered access to records by Defendant Kays and Harper aided their illegal efforts against Plaintiff to have her illegally admitted to a psychiatric ward and to be able to cover up said illegal admission and other illegal and unconstitutional conduct.

67.     Soon after the incidents involving Plaintiff Cosby numerous police officers with the City of Watonga went to the City of Watonga leadership, including the city manager, mayor and council members about what Kays and others did to Cosby and the officers were told the incident was not going to be addressed by the City leadership.

68.     Despite being made aware of the allegations, City officials took no action against Defendant Kays.

69.     Upon information and belief to be confirmed through discovery, Defendant Kays had been terminated from numerous other law enforcement jobs, prior to being hired as Chief of the WPD, for mental unfitness and misconduct.

70.     City officials were aware of Defendant Kays mental unfitness and previous misconduct at the time Defendant Kays was hired as Chief of Police.

71.     Upon information and belief there have been numerous illegal acts by Defendant Kays that should have informed the leadership of the City of Watonga that Defendant Kays was unfit for the profession of policing, even more so the position of Chief of Police.

72.     By way of example, Defendant Kays engaged in the below listed misconduct while employed by the City:

      a.  Bribing police officers to file false complaints on other officers that Kays was at odds with

      b.  Harassing and assaulting, physically and sexually, and stalking other officers;

      c.  Retaliating against officers who would report his misconduct;

73.     Despite Kays history of misconduct, the City of Watonga allowed Kays to remain as the Chief of Police. As the Chief of Police, Kays was in a position to supervise the entire Watonga Police Department, implement and make its policies. This act, of placing Kays in the position of overseeing the policies and operations of the Watonga Police Department, demonstrates that the City had a policy or custom of encouraging, acquiescing to the excessive use of force.

74.     Its inexcusably reckless decision to place Kays in the ultimate position of power within the Watonga Police is also evidence of the City's failure to supervise and train their police officers regarding the proper use of force.

75.     Additionally, there is an affirmative causal nexus between Plaintiff's wrongful seizure and due process violations and the policies or customs of the WPD, including but not limited to:

     a.  A policy or custom of improperly training and supervising officers with respect to evaluating whether persons are or may be experiencing mental health issues;

     b.  A policy or custom of unreasonable bias and discrimination against persons who are perceived by officers as bothersome and/or an annoyance;

     c.  A policy or custom of delegating authority and employing persons who are not sufficiently trained or educated to make the determination of whether persons, including Defendant Kays, are subject to involuntary admission to a mental health facility under 43A O.S. §§5-410, et seq.

76.     The City, through its continued encouragement, ratification, approval and/or maintenance of the aforementioned policies, customs, and/or practices; in spite of their known and obvious inadequacies and dangers; was deliberately indifferent to Plaintiff's clearly established constitutional rights.

<u>**CAUSES OF ACTION**</u>

**Count I – Excessive Use of Force**
**(Fourth and/or Fourteenth Amendment; 42 U.S.C. § 1983)**
**(Defendant Kay)**

77.     Paragraphs 1-76 are incorporated herein by reference.

78.     At the time of the complained of events, Plaintiff, as a free person, had a clearly established constitutional right under the Fourth Amendment to be secure in her person and free from unreasonable seizure through objectively unreasonable excessive force to injure her and her bodily integrity.

79.     Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

80.     In the totality of the circumstances, at the time that the violent force as used by Kays, Plaintiff was: 1) unarmed; 2) not fleeing; 3) not resisting; and 4) posed no threat to Kays, himself, the officer, or anyone else. Furthermore, the offense for which Kays suspected Plaintiff to have committed was neither serious nor violent.

81.     The use of violent force by Kays under such circumstances was excessive and objectively unreasonable.

82.     Kays applied objectively unreasonable and excessive physical force on Plaintiff, thereby causing her serious bodily injures, as well as mental pain and anguish.

83.     As the final policymaker or authorized decisionmaker for WPD, the acts of Kays are properly attributable the City for which the City is liable as well.

84.     As a direct and proximate result of Kays' unlawful conduct, Plaintiff suffered actual physical injuries, mental and physical pain and suffering and other damages and losses as described herein entitling him to recover compensatory and special damages in amounts to be determined at trial.

85.     Additionally, Plaintiff is entitled to punitive damages on her claims brought pursuant to 42 U.S.C. § 1983 as Defendants' conduct, acts and omissions alleged here in constitute reckless or callous indifferences to Mr. Hicks's federally protected rights.

### Count II – Unconstitutional Seizure
### (Fourth and/or Fourteenth Amendment; 42 U.S.C. § 1983)
### (Defendants Kays and Singh)

86.     Paragraphs 1-85 are incorporated herein by reference.

87.     At the time of the complained events, Plaintiff, as a free person, had a clearly established Constitutional right under the Fourth and/or Fourteenth Amendments to be secure in her person and free from objectively unreasonable seizure.

88.     Defendant Kays was reckless and deliberately indifferent to Plaintiff's rights when he unlawfully and without probable cause detained Plaintiff on August 13, 2019.

89.     The seizure of Plaintiff was devoid of probable cause as required by the Fourth Amendment, as applied to the States by the Fourteenth Amendment. This wrongful seizure violated Plaintiff's right to be secure against unreasonable seizure and violated her Fourth Amendment-protected sense of security and individual dignity.

90.     Additionally, the Defendants lacked sufficient probable cause upon which to seek the involuntary commitment of Plaintiff.

91.     Any reasonable officer knew or should have known of these rights at the time of the complained conduct as they were clearly established at that time.

92.     As a direct and proximate result of the actions of Defendant Fuller, Plaintiff sustained damages, including but not limited to imprisonment, economic and personal losses, emotional distress, embarrassment, pain and suffering, and other damages.

**Count III – Failure to Intervene**
**(Fourth and/or Fourteenth Amendment; 42 U.S.C. § 1983)**
**(Defendant Singh)**

93.     Paragraphs 1-92 are incorporated herein by reference.

94.     As detailed above, Singh observed a use of excessive force, had a realistic opportunity to intervene, and failed to do so.

95.     The failure to intervene by Singh was the direct and proximate cause of the damages and injuries suffered Plaintiff.

96.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of Plaintiff's rights.

97.     As a result of the Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered loss of liberty, great emotional pain and suffering, physical injury and other grievous and continuing injuries and damages.

**Count IV – Municipal Liability**
**(Fourth and/or Fourteenth Amendment; 42 U.S.C. § 1983)**
**(City of Watonga)**

98.     Paragraphs 1-97 are incorporated herein by reference.

99.     There is an affirmative link between the aforementioned excessive force, unlawful seizure, and due process violation carried out by the individual Defendants and the policies, practices and/or customs the City and Kays promulgated, created, implemented and/or for which City and Kays possessed responsibility.

100.     First, the City failed to properly supervise Defendant Kays. As set forth above, the City utterly failed to assure Defendant Kays was properly and adequately supervised, despite his known lack of training, and propensity toward violence and violation of Constitutional rights, as

evidenced by his prior misconduct while employed as a law enforcement officer. Furthermore, the City put Kays in the position of Police Chief when they knew, by actual or constructive knowledge, or had reason to know Defendant Kays had a history of misconduct during his previous employment.

101.    Second, the City utterly failed to properly train Defendant Kays. As set forth above, the Defendant's lack of proper training. Evidence of insufficient training on the part of the City include: 1) Defendant's assault on Plaintiff, which shows he exceeded the constitutional limitations on the use of force; and 2) the fact that the use of force in this case arose under circumstances that constitute a usual and recurring situation with which police officers must deal.

102.    Third, the very fact that the policymakers at the City placed Kays in the position of Chief, with knowledge of his prior excessive use of force and/or proclivity for violence, evinces an unconstitutional policy, which may be established through decisions of employees with final policymaking authority.

103.    Watonga police officers who manufactured evidence and illegally seized persons and used excessive force against individuals such as Plaintiff had every reason to know that they enjoyed *de facto* immunity from criminal prosecution and/or Departmental discipline. In this way, this system proximately caused abuses, such as the misconduct at issue in this case.

104.    Additionally, there is a practice and custom in the WPD of officers faced with a lack of objective evidence, conducting biased or one-sided investigations intended not to determine the truth of the matter but rather to either prove a case against convenient suspects or else retaliate against them to "teach a lesson" regarding police authority.

105.     By failing to discipline Defendant Kays for his and other wrongful conduct, the City encouraged, ratified and/or approved of the unconstitutional acts and/or omissions alleged herein.

106.     Moreover, the policies or customs at issue reflected a deliberate or conscious choice by the City, through its officials, to disregard a known risk of Constitutional violations.

107.     As a direct and proximate result of the aforementioned policies, practices and customs, Plaintiff suffered injuries and damages as alleged herein.

### Count V –Conspiracy to Deprive Constitutional Rights
### (Fourteenth Amendment; 42 U.S.C. § 1983)
### (Defendants Kays and Harper)

108.     Paragraphs 1-107 are incorporated herein by reference.

109.     As detailed above, Kays and Harper acted in concert to do an unlawful act, or do a lawful act by unlawful means when they to deprive Plaintiff of her liberty and property and use excessive force against Plaintiff by maliciously fabricating evidence that would be used to detain Plaintiff.

110.     In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

111.     In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

112.     As the final policymaker or authorized decisionmaker for WPD, the acts of Kays are properly attributable the City for which the City is liable as well.

113.    The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's rights.

114.    As a result of Defendants' misconduct described in this count, Plaintiff suffered loss of liberty, great mental anguish, physical injury, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

### Count VI – Negligence against Defendant TPD

115.    Paragraphs 1-114 are incorporated herein by reference.

116.    The City, and its employees/agents, owed a duty to the Plaintiff, to use a reasonable amount of force when attempting to detain her.

117.    Kays failed to use reasonable force against Plaintiff when he slammed Plaintiff to the ground when she posed no threat to him.

118.    Additionally, WPD Officers owed Plaintiff a duty to use reasonable care in the investigation of crimes reported against him and the determination of probable cause to detain and seek the commitment of Plaintiff.

119.    Kays and Singh failed to use reasonable care in investigating Plaintiff's mental state and had Plaintiff detained and committed without sufficient probable cause to do so.

120.    Kays and Singh's actions were taken in the course and scope of their employment with the City/WPD.

121.    The City is liable for Kays and Singh's actions pursuant to the Oklahoma Government Tort Claim Act, 51 O.S. § 151, et seq.

122.    As a direct and proximate cause of the City's actions and conduct, Plaintiff sustained damages, including but not limited to serious bodily injury, pain and suffering, medical expenses, loss of wages, as well as other damages in excess of $75,000.00.

WHEREFORE, premises considered, Plaintiff prays this Court grant the relief sought, including but not limited to actual and compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from the date of filing suit, the costs of bringing this action, a reasonable attorneys' fee, along with such other relief as is deemed just and equitable.

Respectfully submitted,

SMOLEN | LAW, PLLC

/s/ John Warren
Donald E. Smolen, II, OBA #19944
John W. Warren, OBA #33635
611 S. Detroit Ave.
Tulsa, OK 74120
P: (918) 777-4LAW (4529)
F: (918) 890-4529
don@smolen.law
jack@smolen.law
*Attorneys for Plaintiff*